UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case 1:21-CR-350 |
| ) | |
| ANTOINNE BRODNAX, ) | |
| Defendant. ) | |
| ) | |

**Defendant's Sentencing Memorandum**

COMES NOW, Antoinne Brodnax, by counsel and files his sentencing memorandum with the Court. Mr. Brodnax entered a plea to the four count information in this case because he was unable to reach a plea agreement with the government; however, Mr. Brodnax's decision to enter a straight up plea in lieu of entering a plea agreement is not a factor for the Court to consider in imposing sentence in this case. *United States v. Cozad*, 2022 U.S. App. LEXIS 57 (10th Cir, Jan. 3, 2022)(holding that under 18 U.S.C. § 3553(a), it was procedurally unreasonable for the district court to impose a harsher sentence based on defendant's decision to enter an open plea).

The Sentencing Guidelines in this case have been properly calculated at 2-8 months and Mr. Brodnax request a sentence of probation, and if the Court deems it necessary a period of home detention not to exceed two months. Mr. Brodnax's limited actions, his cooperation with the government, his post-offense conduct, his unconditional acceptance of responsibility and his deep feeling of remorse support his requested sentence. This is appropriate under the 18 U.S.C. §3553(a) sentencing factors that require the Court to impose a sentence that is sufficient but not great than necessary to meet the statutory sentencing objectives in §3553.

1

**The Offense Conduct**

Prior to January 6, 2021, Mr. Brodnax travelled to Washington, D.C. to shoot a music video. While he was there he witnessed a rally on the Mall and went out to see what was going on. After the rally was over he followed the crowd to the U.S. Capitol. Shortly after 2:00 p.m. members of the crowd that had formed outside the Capitol forced entry into the building. After entry into the Capitol had been made by others, Mr. Brodnax entered the U.S. Capitol through the Senate Wing Door near room S139 at approximately 2:24 p.m. Within a minute of his entry, 2:25 p.m., he walked into the Rotunda. While in the Rotunda he first stayed within the rope lines. After a couple of minutes, however, he walked outside of the rope lines toward a doorway leading to Statuary Hall. At approximately 2:28 p.m. Mr. Brodnax entered the Statutory Hall. Again, he initially stayed within the rope lines but then stepped out of them. He then walked up to the base of one the statues, where he posed for a photograph. He then walked through a doorway that leads to the Statutory Hall connector. When he entered this area there was already a crowd of people there. Police officers formed a line to hold the crowd back. Over the next few minutes, more and more people entered the same area. At approximately 2:36 p.m., the group, including Mr. Brodnax, pushed past the police line, the defendant was several feet back from the police line when it was breached and made no physical contact with any police officer, he was swept along with the crowd.

The crowd, including Mr. Broadnax, then moved forward about 15 feet where they were pressed into a narrower area blocked by a closed doorway and more police officers. Over the next few minutes, the group attempted to get through the doorway, with several members of the group repeatedly and loudly yelling, "Break it down!" There is no evidence that Mr. Brodnax yelled anything, he appears pinned into the hallway by members of the group. The group was not successful in getting through the doorway.

At approximately 4:01 p.m., Mr. Broadnax approached the East Rotunda Doorway exit of the Capitol and attempted to leave the building. He was unable to exit when multiple unauthorized persons standing outside the doorway pushed their way into the building. Several minutes later, at approximately 4:06 p.m., Mr. Brodnax exited through the doorway. While outside the Capitol building on January 6, he posed for a photograph as he sat on the hood of a USCP SWAT vehicle. (ECF 32: PSR ¶¶ 15-21).

Mr. Brodnax did not come to Washington, D.C. to go to the Capitol or to disrupt the certification of the Electoral College. He had no weapons. He committed no violence. He damaged no property. He shouted no incendiary exhortations or threats. He is guilty of misdemeanor conduct. He exhibited no aggravating conduct during the event.

**History and Characteristics of Mr. Brodnax**

Mr. Brodnax is a thirty-nine year old man moving forward with is life in a positive way. In September 2021 he moved to Dallas, Georgia to live with his girlfriend. Since arriving in Georgia, he has found work and is now a valued employee of Universal Pure, LLC located in Villa Rica, Georgia. (Exhibit 1, 2). His co-worker Ms. Williams describes him as a dedicated co-worker, who "goes above and beyond to complete his work." He is an asset to the team, and his superiors hope that he will "stick around" given his excellent work ethic and productivity. (Exhibit 3).

In addition to being a hard worker, Mr. Brodnax is also an entrepreneur. He has a clothing line and a music label. Mr. Brodnax "is a great community asset and encouraged so many others around him to be and do better." He works with young music artist in the community and helps them start their careers. (Exhibit 4). Finally, Mr. Brodnax is a very committed father. He has a "wonderful" relationship with his daughter and talked to her almost every day. (PSR ¶62).

Mr. Brodnax has overcome the odds; his mother was approximately 13-14 years old when she gave birth to him. "[S]he was a child raising a child." (PSR ¶ 59). His biological father was never in his life. His family moved frequently because of financial issues, he attended three different elementary school and three different middle schools and ultimately withdrew from school after the eighth grade. *Id*. He lived in various low-income neighborhoods plagued with violence. Once he dropped out of school, Mr. Brodnax turned to the streets to find a community. His contact with the criminal justice system began at age 18. Upon his most recent release in 2019, Mr. Brodnax committed himself to being a productive citizen. He worked for various companies in the Metro Richmond area while continuing to pursue his music career and clothing line. He realized to fully thrive he needed to leave the Richmond area and make a fresh start; he has done that now.

**Post-Arrest Conduct and Acceptance of Responsibility**

Within two weeks of the events at the Capitol the FBI contacted Mr. Brodnax at his home in Richmond. Mr. Brodnax was cooperative with the agents and confirmed that he was inside the U.S. Capitol Building on January 6, 2021. He admitted that he took a number of pictures inside of the building. He told the agents the truth - that he did not enter any offices or the chamber floor - that he did not break anything or take anything. He told the agents as a convicted felon that he cannot vote and described himself as "non-political."

Mr. Brodnax was arrested on March 11, 2021, and made his initial appearance where he was released on a personal recognizance bond. Since that time Mr. Brodnax has complied with all of the Court ordered conditions of release. (PSR ¶ 7). Mr. Brodnax entered a plea of guilty, and accepted responsibility. In meeting with the probation officer preparing the Presentence

Report, Mr. Brodnax expressed clear, definite and unequivocal acceptance and remorse. (PSR ¶ 41).

Mr. Brodnax has relocated to Georgia.  His life is primarily spent at his job and working to support his daughter.  His job as a dock worker in a warehouse is a very difficult job with long fluctuating hours.  His co-worker comments, "I know that there have been a couple of times where he [Mr. Brodnax] had to cancel plans lined up that he had to cancel because of work. He didn't grumble or get upset like many do at the last minute." (Exhibit 3).  Mr. Brodnax is committed to his work and to his family. (Exhibits 5, 6)

**Other Sentencing Factors**

*Punitive, deterrent, protective, and rehabilitative purposes of sentencing*

The sentencing statute directs the Court to impose a sentence that is **minimally** sufficient to comply with the purposes of sentencing listed in paragraph § 3553(a)(2), frequently referred to in shortcut form as punishment, deterrence, incapacitation, and rehabilitation. The sentencing statute requires the Court to consider "the kinds of sentences available." 18 U.S.C. § 3553(a)(3). The statute of conviction carries a no mandatory minimum.

18 U.S.C. § 3553(a)(2)(A) requires a sentencing court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  In addition, the sentence should adequately deter future criminal conduct and reflect the need to protect the public from future crimes by this defendant.  18 U.S.C. § 3553(a)(2)(B)(C).

Congress authorizes probation for a broad range of offenses and offenders, i.e., for any offense with a statutory maximum below 25 years so long as probation is not expressly precluded and the defendant is not sentenced to prison for a non-petty offense at the same time. See 18 U.S.C. § 3561(a); 18 U.S.C. § 3559(a).  Congress expected that the threshold question in most cases would

continue to be whether probation was sufficient or whether prison was necessary. It instructed judges as follows:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. §3582(a); S. Rep. No. 98-225 at 119 n. 415 (1983). Congress intended that probation would be used with at least the same frequency as before the guidelines. It directed the Commission to "ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society" while permitting increased use of restitution, community service, and other alternative sentences" in all other cases. *See* Pub. L. 98-473, § 239, 98 Stat. 1987, 2039 (1984).  Congress identified when probation should be a presumptive sentence, when some term of imprisonment should be imposed, and encouraged the use of non-prison alternatives in-between. Under U.S.S.G. § 5C1.1(c)(3) the Court may impose a sentence of probation that includes a condition of home detention.[1]  According to the U.S. Sentencing Commission, offenders are less likely to recidivate when their sentence is probation as opposed to straight prison.[2]  Finally, the Supreme Court has recognized that supervision imposes a serious restriction on a person's liberty. *See Gall v. United States* , 552 U.S. 38, 48 (2007). Individuals on supervision are "nonetheless subject to several standard conditions that substantially restrict their liberty." *Id.*; *see also United States v. Knights*, 534 U.S. 112, 119 (2001)

---

[1] Mr. Brodnax would note that U.S.S.G. § 5F1.2 has also been amended and makes plain that when home detention is made a condition of supervision, the Court may use electronic monitoring or an alternative means of surveillance may be used as appropriate. U.S.S.G. § 5F1.2 cmt. 1.

[2] Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004). Available at: www.ussc.gov/publicat/Recidivism_general.pdf

("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal citation omitted). Probation is a sentence and provides an extra measure of deterrence and protection of the community in addition to a restriction on one's freedom. Again, if the Court deems it necessary, a term of home detention can be imposed as a special condition of Mr. Brodnax's probation in this case.

Mr. Brodnax has complied with the conditions of release set by this Court for almost a year. He has a stable home and employment. There is no need for any imprisonment at this time.

**Conclusion**

For the reasons argued above, Mr. Brodnax respectfully asks this Court to impose a sentence of probation and a special condition of home detention if deemed appropriate by the Court.

          Respectfully submitted,
          ANTIONNE BRODNAX

          By: _____/s/_____
                      Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: Michael Liebman, Assistant United States Attorney, 555 Fourth St., N.W., Washington, D.C. 20530.


Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600 Richmond, VA   23219-1884
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org