UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case 1:21-CR-350-PLF |
| ) | |
| ANTIONNE DE SHAUN BRODNAX, ) | |
| Defendant. ) | |
| ) | |

**Defendant's Response to Government's Sentencing Memorandum**

COMES NOW, Antionne Brodnax, by counsel, and files his response to the Government's Sentencing Memorandum (ECF 41). Mr. Brodnax objects to the government's recommendation for 21 months. The government's request is disparate, disproportionate, and discriminatory. It is disproportionate to any other sentence imposed in a misdemeanor case; it would result in a dramatic disparity; and it does not reflect the proper guideline calculation. The request reflects the government's desire to punish Mr. Brodnax for not accepting the government's plea offer.

The government is requesting 9 months incarceration to be imposed on Count One, and 12 months incarceration imposed on Count Two to run consecutively, and six months incarceration on Count Three and Count Four to be imposed concurrently to each other and concurrent to the sentences imposed on Counts One and Two. (ECF 41 at 41).

The Probation Officer has determined that the appropriate guidelines in this case are 2-8 months, and the appropriate guideline range is in Zone B of the Sentencing Table. (PSR ¶ 88-89). The probation officer found that the appropriate guideline for Count One and Count Two is U.S.S.G. §2B2.3 (trespass), and that the counts are grouped because they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). Mr. Brodnax would request the Court adopt the guideline calculations in the presentence report and impose a sentence of probation, and

if the Court deems it necessary, a period of home detention not to exceed two months. Mr. Brodnax's limited actions, his cooperation with the government, his post-offense conduct, his unconditional acceptance of responsibility, and his deep feeling of remorse support his requested sentence. This is appropriate under the 18 U.S.C. §3553(a) sentencing factors that require the Court to impose a sentence that is sufficient but not greater than necessary to meet the statutory sentencing objectives in §3553.

**A.  A Sentence of 21 Months Would Result in a Dramatically Disparate Sentence.**

The government is requesting a dramatically disparate sentence in this case. The sentence the government is requesting is not only the longest sentence requested to date in a misdemeanor case, but it also exceeds the government's request in felony cases that have been sentenced. According to the government's own information, the longest sentence to be imposed in any January 6, 2021 misdemeanor case has been six months. (ECF 41-2). The very cases the government relies on to support its request for a 21-month sentence show how disproportionate that request is in this case.

In *United States v. Michael Curzio*, 1:21-CR-41, the defendant was sentenced to six months of imprisonment. Mr. Curzio was detained pre-trial because he had a recent prior conviction for Attempted First Degree Murder in Florida for which he spent time in prison and was released less than two years before the current charged offenses. In addition, at the detention hearing, the Court found it was undisputed that Curzio was a member in a violent white-supremacist prison gang, the Unforgiven, while he served time in the Florida Department of Corrections. Curzio bears tattoos with Nazi imagery. During his arrest, Curzio was wearing a necklace with a pendant of Thor's hammer, which the government argued is a "White Power" symbol, but which Curzio argued was a symbol of Odinist religious beliefs.  There was strong evidence that Curzio committed the offenses due to his violent criminal and gang-related history.  In addition to his prior criminal

history and gang affiliation, Mr. Curzio entered the Capitol and was seen in the area where rioters were throwing chairs at law enforcement officers. He is seen coming down the stairwell where the chairs were thrown wearing a gas mask. 1:21-CR-41 ECF 54 at 3-4. Curzio joined an unruly mob that thrust objects and liquids at police officers. As a melee broke out between officers and the individuals they attempted to arrest, Curzio watched close by and appeared to record the action on his phone. *Id*. at 9.

In *United States v. Karl Dresch*, 21-CR-71 the defendant was sentenced to six months. Mr. Dresch's criminal record consisted of a 2013 fleeing and eluding arrest after engaging in a high speed car chase across interstates line where he traveled at speeds over 140 miles per hour. He also has prior convictions of disturbing the peace (Michigan 9/12/2008); permitting another to violate the motor vehicle code (Michigan 2/4/2010); and obstructing officer (Michigan 11/11/2011). In addition, search warrants executed at his residence on January 19, 2021, and January 20, 2021, revealed multiple firearms and boxes of ammunition. Agents retrieved a Russian SKS assault-style rifle, 2 shotguns, a Glock pistol and over 100 rounds of ammunition. The ammunition found in the residence matched the ammunition found in the Atlanta Braves Backpack which contained a gas station receipt from a Maryland gas station on January 5, 2021, and a Metro SmartTrip card. Dresch had a criminal history category III, and the government requested a six-month sentence. (1:21-CR-71: ECF 33 at 7-8).

In *United States v. Bauer*, 1:12-CR-49-1, the defendant was sentenced to forty-five days imprisonment. Bauer and his cousin, Hemenway, entered the Capitol and were inside for approximately seventeen minutes. Bauer and his cousin took a selfie inside the Capitol, and they did not appear to engage in acts of violence or property obstruction; however, outside of the Capitol took this photograph standing on a military-style vehicle with a U.S. Government license plate

3

appearing elated. It appears to be the same, if not similar, to the vehicle on which Mr. Brodnax took a picture.



Bauer and his cousin Hemenway chanted, "Stop the Steal" with the crowd. Bauer told the FBI, "I don't feel like I done nothing terribly wrong," but acknowledged, "I don't agree with some things that went on." He said, "If I had been in a cop uniform on that day I would have been scared for my life."  Case 1:21-cr-49 ECF 33 at 6. While inside the building, Bauer accomplished his goal of "occupy[ing] the space." He joined a mob of people and walked through the building from the Senate Wing Door, into the Crypt, down the OAP hallway, and to the Memorial Door. He took photographs.  The Pre-Sentence Report detailed Bauer's extensive criminal history dating back to 1999, when he was 21 years old. 1:12-CR-49-1 ECF 31 citing to PSR at ¶¶ 25-26. By his own admission, from an early age Bauer has struggled with drug and alcohol abuse. *Id.* ¶ 51. He told the PSR writer that he was a "meth cook" from 2003 until his arrest and incarceration in 2006. *Id.* ¶ 67. He started smoking marijuana when he was 11 years old and became "a distributor of marijuana to kids in his community" while in elementary school. *Id.* ¶ 52. He has apparently attended numerous drug and alcohol treatment programs over the years but does not feel that he needs treatment now and "has not used methamphetamines, marijuana or oxycontin since 2006." *Id.* ¶ 53. Consequently, Bauer has been arrested and convicted multiple times, including: 09/02/1999: Operating a Motor Vehicle Alcohol-Drugs; 06/20/2005: Possession of Anhydrous Ammonia and Vandalism; 09/24/2005: Possession of Methamphetamine, Manufacturing Methamphetamine and related charges; 07/24/2006: Unlawful Possession of Meth Precursor Id. ¶¶ 25-29. In the 2006 case, he was sentenced to 3 years' incarceration, and would have been released in about 2010. *Id* 11-12.  His cousin, Hemenway, was also sentenced to forty-five days and has a serious criminal history dating back to 2004. *United States v. Hemenway,* 1:21-CR-49-2.  Most notably, Hemenway pled guilty in 2006 to Sexual Battery and Criminal Confinement and was sentenced to 3 years' imprisonment, all but 1 year suspended. His probation was revoked,

however, and he was re-sentenced to 5 years' imprisonment. As a result, he was incarcerated from 2008 to 2011. His parole term ended in 2013. *Id* ECF 32 at 11.

In *United States v. Mark Simon*, 1:21-CR-67, the defendant was sentenced to thirty-five days. Mr. Simon entered with a mob and took videos inside the Capitol. Simon is a 50-year-old man with a lengthy criminal history that includes convictions for assault with a deadly weapon as recently as February 19, 2020; carrying a loaded unregistered firearm on February 19, 2019, vandalism on September 26, 2019, possession of a controlled substance on June 28, 2019, possession of marijuana for sale on February 7, 1992; transportation of Marijuana on March 26, 1998, and disorderly conduct on February 4, 1992. The defendant is no stranger to being placed on probation and is equally no stranger to probation violations and having his supervision revoked. The defendant admittedly struggles with a longstanding narcotics addiction. He admittedly supported his drug habit by selling "Donald Trump Hats." Case 1:21-cr-00067 ECF 32 at 9.

In *United States v. Boyd Camper*, 1:21-CR-325, the government requested two months of incarceration. Camper flew from Montana to Washington, D.C in January 2021 and brought his son with him. Camper entered the Capitol and made it the top of the Capitol steps where he got tear gas in his eyes. He nonetheless entered the Capitol and was in possession of a Go-Pro camera with an extension pole that he held at shoulder level while recording inside and outside the Capitol. He posted to YouTube and acknowledged "I was on the front line." He further stated "We're going to take this damn place. If you haven't heard its called the insurrection act and we the people are ready." 1:21-CR-325 ECF 30 at 5. When asked for his Go-Pro recording by federal agents he said he was willing to share the Go-Pro footage with the FBI but only if he received a guarantee that the footage would not be used against him. On March 11, 2021, when asked for the Go-Pro, Camper told the agent it was "inaccessible buried out in the cold" and did not reveal its location.

*Id.* at 7. Mr. Camper has "a criminal history stretching back to when he was 30 years old being convicted of "Lewd Acts in Public" up through his most recent arrest in 2015 for "Inflicting Corporal Injury on a Spouse." *Id*. at 9.

In the *Camper* case the government asked for two months of incarceration and did not move for any enhanced sentence for obstructing justice by failing to provide his Go-Pro to federal agents. The government stated, "Camper's concealment of evidence from the FBI is aggravating, to say the least." *Id*. at 12. The government also noted that "…Camper has not expressed remorse…" ". . .and his lack of remorse underscore the need for specific deterrence…" *Id.* Yet the government requested two months of incarceration.

In *United States v. Rukstales*, 1:21-CR-41-5, the government requested a sentence of 45 days for a defendant who threw a chair at a law enforcement officers forcing the officers to retreat. 1:21-CR-41-5 ECF 130 at 3. "A melee ensued, with officers tackling multiple rioters resisting arrest, and onlookers jumping and running around, gesturing, gawking at, and appearing to egg on other rioters, while some others fled the area..." Rukstales did not leave the area; he remained in the middle of the scrums that had broken out between rioters and officers. At one point, an officer brushed up against Rukstales from behind, and Rukstales's "arm stretched out in the officer's direction." *Id.* at 7-12. Ultimately, it took at least three officers to effectuate the arrest of Rukstales. *Id*. at 18.

These cases demonstrate that in all other misdemeanor cases, where the defendant had a "serious" prior criminal history, the government has requested incarceration. However, the government has never requested more than six months. In addition, in many of the misdemeanor cases where the government has requested incarceration, there were other aggravating factors such as throwing chairs at law enforcement, joining in a melee with officers, shouting in the Capitol,

7

posting on-line and resisting arrest. None of which are present in Mr. Brodnax's case. Finally, what is perhaps most demonstrative of the disparity and disproportionality of the government's request in this case is that in *Camper* the defendant admitted to having a Go-Pro camera, claimed he would provide it to law enforcement, and never did – claiming it was "buried in the cold." Yet, the government did not request any enhanced punishment for this behavior. In addition, in both *Bauer* and *Hemenway*, the defendants are seen standing on a vehicle almost identical to the one Mr. Brodnax was photographed sitting on, yet the government only requested 30 days of incarceration for these two men.

The requested sentence of 21 months reflects a disproportionate and disparate sentence for an African-American rapper, with a criminal record, who like all the other defendants above entered a guilty plea to misdemeanor charges.

**B. Mr. Brodnax is Being Punished for Refusing a Plea Offer**

On September 21, 2021, the government made a plea offer to Mr. Brodnax. The plea offer made was that if Mr. Brodnax entered a plea to Count Three of the Criminal Information charging a violation of Title 40 United States Code Section 5104(e)(2)(D), with a statutory maximum of six months, the government would dismiss the remainder of the charges. The offer was conditioned upon an agreement of the "Statement of Offense" and cooperation with additional investigation. (Exhibit 1, 2). The "Statement of Offense" filed in this case is almost identical to that proposed by the government as part of the plea offer in this case. Now, instead of asking for a sentence of six months, the maximum possible under the proposed plea, the government is requesting a sentence of 21 months, the highest sentence ever asked for in a misdemeanor Capitol prosecution case.

After waiving the constitutional rights and claims inherent to entering a guilty plea, there are many reasons why a defendant may decide that the plea agreement the government has decided to offer does not provide additional benefit. For example, a plea agreement that includes dismissal of other charges does not preclude the conduct underlying the dismissed charges from being used against a defendant to enhance his sentence. *United States v. Watts*, 519 U.S. 148, (1997); U.S.S.G. § 6B1.2(a); Exhibit 1 at 2.  And an appeal waiver in a plea agreement need not be mutual, meaning the defendant may be required to waive his right to appeal any sentence, while the government–surely in the superior bargaining position–can preserve its right to appeal the sentence. *See United States v. Mills*, 902 F.3d 1159, 1161 (10th Cir. 2018). That a defendant was not able to extract sufficient concession from the government to make a plea agreement beneficial to him is not an aggravating sentencing factor, and has no bearing on the sentence he should ultimately receive. If a defendant cannot get concessions from the government in exchange for waiving some appellate rights, he simply may not wish to waive his right to seek review of his sentence. That decision does not justify increasing his sentence.

Sections 3553(a) and 3661 cannot be read to allow the district court to consider a defendant's inability to reach a plea agreement as a sentencing factor without raising serious due process concerns.  It is "settled policy" that a court should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 863 (1989).

The Supreme Court has recognized that a criminal defendant "certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 386, 372 (1982). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357,

363 (1978); see also *United States v. Jackson*, 390 U.S. 570, 581 (1968)(noting that imposing punishment to "penalize those who choose to exercise" their constitutional rights "would be patently unconstitutional").

Thus, the sentencing statutes like § 3533(a) and § 3661 cannot be read to allow a defendant's exercise of his constitutional or statutory rights to be a reason for increasing his punishment. *Bordenkircher*, 434 U.S. at 363 (holding that increasing a defendant's sentence in retaliation for a successful collateral appeal violated due process). In *United States v. Hernandez*, 894 F.3d 1104,1112 (9th Cir. 2018), the Ninth Circuit held that the district court could not increase a defendant's sentence because he exercised his Sixth Amendment right to trial, rather than pleading guilty. The court reasoned that "[e]nhancing a sentence solely because a defendant chooses to go to trial risks chilling future criminal defendants from exercising their constitutional rights, and imposing a penalty for asserting a constitutional right heightens the risk that future defendants will plead guilty not to accept responsibility, but to escape the sentencing court's wrath." *Id*. Similarly, in *United States v. Cabrera*, 811 F.3d 801, 809-12 (6th Cir. 2016), the Sixth Circuit held that a district court could not increase a defendant's sentence for exercising his Fifth Amendment right to silence. The Sixth Circuit held that "by relying on [the defendant's] silence at trial as a sentencing factor, the district judge did not simply contravene § 3553; he burdened a fundamental constitutional right." *Cabrera*, 811 F.3d at 812.

One of the rights possessed by a criminal defendant is the right to choose whether to plead guilty. "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty. Waive a jury, testify in his or her own behalf, or take an appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); see also *McCoy v. Louisiana*, 138 S.Ct. 1500, 1508 (2018)(reaffirming these categories). Criminal defendants also have a statutory right to

appeal a sentence under 18 U.S.C. § 3742(a). Allowing the district court to punish a criminal defendant because he was unable to reach a plea agreement with the government or because he did not agree to an appeal waiver raises the same due process concerns as punishing a defendant for electing to go to trial, see *Hernandez*, 894 F.3d at 1112, or for maintaining his right to silence, see *Cabrera*, 811 F.3d at 812. The district court may not "punish" Mr. Brodnax for doing what the law plainly allows him to do without violating due process protections.

Interpreting § 3553(a) and § 3661 to allow the district court to punish Mr. Brodnax because he pled without a plea agreement would raise serious due process questions, and that interpretation should be rejected. In *United States v. Cozad*, 2022 U.S. App LEXIS 57 (10th Cir. Jan 3, 2022) the Tenth Circuit stated that "[t]o penalize a defendant based on the absence of a plea agreement alone is arbitrary." *Id*. *9. The Court stated "Section 3553(a) provides that courts are to impose no more punishment than is necessary to comply with the four penological goals enumerated in § 3553(a)(2). When a court imposes a sentence to achieve some other purpose, that sentence is unlawful." *United States v. Burgos,* 276 F.3d 1284, 1289-90 (11th Cir. 2001).

Mr. Brodnax indicated early on in this case that he would like to enter a plea. On September 21, 2021, the government extended a plea offer to Mr. Brodnax. Under the terms of the agreement, he would enter a plea to the petty offense contained in Count Three of the criminal information. The maximum penalty for that offense is six months. The government would not agree to any specific sentence within the range of 0-6 months. (Exhibit 1). The agreement, while it committed the government to dismissing the additional charges of the information, required Mr. Brodnax to agree and acknowledge that the charges to be dismissed at the time of sentencing were based in fact. (*Id*. at 2). It also required that Mr. Brodnax waive his right to appeal his conviction, sentence, and collateral attack, (*Id*. at 4-5) and cooperate with additional investigation. (*Id*. at 2). Finally, it

11

allowed the government to use self-incriminating statements for any purpose at sentencing in this case or in any related criminal or civil proceeding and a requirement to pay restitution.

     Mr. Brodnax decided to enter a plea to all four counts in the criminal information. At the time of the plea, a Statement of Offense was filed with the Court. It had only minor alterations from the Statement of Offense tendered by the government with the plea agreement, yet the government refused to sign off on the Statement of Offense. At the time of the plea colloquy the government did not dispute the information contained in the Statement of Offense and agreed it provided a factual basis for the plea.

Mr. Brodnax has pled guilty and accepted responsibility for his conduct on January 6, 2021. His conduct and criminal record are consistent with multiple other defendants who have been charged with misdemeanor offenses. Yet, the government is seeking a sentence of 21 months. The government is punishing Mr. Brodnax for failing to enter a plea agreement. The fact that Mr. Brodnax pled without an agreement is not a sentencing factor to be considered by the Court in imposing sentence in this case; to do so would be unlawful. *United States v. Cozad*, 2022 U.S. App LEXIS 57 (10th Cir. Jan 3, 2022).

### C. The Probation Officer Has Properly Calculated the Guidelines

The Probation Officer has determined that the appropriate guidelines in this case are 2-8 months, and the appropriate guideline range is in Zone B of the Sentencing Table. (PSR ¶¶ 88-89). The probation officer found that the appropriate guideline for Count One and Count Two was U.S.S.G. §2B2.3 (trespass), and that the counts are grouped because "they involved the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). This results in a base offense

level 4, +2 for restricted building, for a total offense level of 6, minus 2 for acceptance, with a total offense level of 4. (PSR ¶¶ 34-41).

The government is now arguing that the appropriate guideline for Count Two is U.S.S.G. § 2B2.4 (obstruction of justice) and that the base offense level for Count Two should be 10. In addition, the government has argued that an enhanced penalty under U.S.S.G. § 3C1.2 should be applied. (ECF 41 at 24).

### 1.   The appropriate guideline for Count Two is U.S.S.G. § 2B2.3

The guidelines apply to Count One and Count Two of the Criminal Information. Mr. Brodnax and the government agree that the base offense level for Count One is 6; however, there is disagreement as to the appropriate base offense level for Count Two of the Information. ECF 41 at 23. Count Two of the criminal information charges Mr. Brodnax with a violation of 18 U.S.C. § 1752(a)(2). That statute reads: "whoever knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C.S. § 1752(a)(2). In other words, the gravamen of the offense is to impede and disrupt the orderly conduct of Government business, not any activity that obstructed or impeded officers.

The government argues that U.S.S.G. § 2A2.4 (obstructing justice) applies because "a defendant cannot 'in fact' impede government business without also impeding and obstructing officers – as the defendant here did – the most appropriate guideline is § 2A2.4." (ECF 41 at 24). There is no evidence in this case that Mr. Brodnax impeded or obstructed any officers.  In fact, the government accurately describes Mr. Brodnax's conduct as a trespass. ("While in the building he

trespassed through a variety of hallways and rooms…" ECF 41 at 2). The statement of offense in this case clearly reads that Mr. Brodnax had no contact at all with police officers or any other law enforcement on the date of the offense. In addition, while he was inside of the Capitol, Mr. Brodnax did not yell anything. ECF 32, ¶¶ 11-12. The Statutory Appendix allows for the application of U.S.S.G. 2B2.3, and that is the guideline that reflects the offense conduct charged in the count of conviction, and is consistent with the statement of offense conduct. U.S.S.G. 1B1.2 cmt. 1.

The offenses are properly grouped because they "involve the same victim and one or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." (PSR ¶ 30), the offense also involves "substantially the same harm." U.S.S.G. § 3D1.2 cmt. 1.

### 2. Obstruction of Justice Enhancement under U.S.S.G. § 3D1.1 is not Applicable

Mr. Brodnax did not obstruct justice and the enhancement under U.S.S.G. § 3C1.1 should not apply. The government carries the burden of proving any facts that may be relevant in sentencing. *United States v. Hawkins*, 185 F. Supp. 3d 114, 128 (D.D.C. 2016); *United States v. Price*, 409 F.3d 436, 444, 366 U.S. App. D.C. 166 (D.C. Cir. 2005); *United States v. Washington*, 115 F.3d 1008, 1010, 325 U.S. App. D.C. 105 (D.C. Cir. 1997) ("The burden is on the government to prove facts in support of a sentence enhancement by a preponderance of the evidence."). The obstruction guideline reads:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct, or (B) a closely related offense, increase by 2.

U.S.S.G. § 3C1.1. The enhancement applies where a defendant "willfully obstructed or impeded, or attempted to obstruct or impede . . . the investigation" that resulted in the defendant's conviction. U.S.S.G. § 3C1.1(1). Obstruction under the Guidelines includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation . . . or attempting to do so." *Id.* § 3C1.1 cmt. n.4(D). Where "such conduct occurred contemporaneously with arrest," the enhancement applies if that conduct "resulted in a material hindrance to the official investigation or prosecution." *Id.*; *United States v. Thornton*, 822 F. App'x 397, 408 (6th Cir. 2020). "An enhancement under § 3C1.1 is only appropriate where the defendant acts with the intent to obstruct justice." *United States v. Ring*, 811 F. Supp. 2d 359, 383 (D.D.C. 2011). Material hindrance requires at the least, an actual, negative effect on either the course or result of the investigation. *United States v. Morales-Sanchez*, 609 F.3d 637, 641 (5th Cir. 2010).

Here, the government argues that Mr. Brodnax recorded videos while in the Capitol on January 6, 2021, and then deleted them on a date after law enforcement requested a copy of the videos from him. (ECF 41 at 26). First, the government cannot prove that Mr. Brodnax deleted any videos from his phone prior to law enforcement obtaining a search warrant for the phone, but even if the government proves Mr. Brodnax deleted the videos, that does not constitute obstruction because the deleted video was not material to this investigation or offenses of conviction, and did not have a negative effect on either the course of the result of the investigation of the offenses with which Mr. Brodnax is charged.

Mr. Brodnax was first contacted by FBI agents on January 15, 2021. At that time, Mr. Brodnax admitted to the agents that he had taken videos inside the Capitol. The agents requested that Mr. Brodnax send them a copy of the videos. Mr. Brodnax chose not to do

15

so. That was his constitutional right, there was no Court order compelling his compliance with this request. On March 11, 2021, Mr. Brodnax was arrested and his phone was seized by the FBI. In April 2021, search warrants were served for all of Mr. Brodnax's social media accounts, and all of his videos recorded on January 6, 2021 were obtained by the federal agents investigating this case. It was not until August 10, 2021, that agents even applied for a search warrant for Mr. Brodnax's phone. The results of that search warrant are yet to be delivered to counsel. Given the delay in obtaining the warrant, arguably a Fourth Amendment violation, See *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), the government wants to argue that what was or was not on the phone was material. Their delay in obtaining the information from the phone belies the argument that the evidence is "material" to the investigation, and since the results of the search were not even obtained until months after Mr. Brodnax's plea, it cannot be argued it was material to the investigation or prosecution of his conduct.

The government cannot sustain its burden in demonstrating that Mr. Brodnax obstructed justice in this case. The Court should adopt the guidelines as calculated by the U.S. Probation Officer. The appropriate guidelines in this case are 2-8 months in Zone B of the guidelines

### D. The Federal Statutes and Guidelines Support a Concurrent Sentence on All Counts of Conviction

Title 18 U.S.C. § 3584 (a) states that "multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." *Id*. see *Sester v. United States*, 566 U.S. 231 (2012). In determining whether the terms imposed are to be ordered to run concurrently or consecutively, the Court shall consider the factors in 3553(a). 18 U.S.C.§ 3584(b). Section 3553(a) requires the Court

to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 3553. Section 3553 requires the Court impose the minimally sufficient sentence.

U.S.S. G. § 5G1.2 provides guidance to the Court in how to impose a sentence when there are multiple counts of conviction. The application notes explain:

> Except as otherwise required by subsection (e) or any other law, the total punishment is to be imposed on each count and the sentences on all counts are to be imposed to run concurrently to the extent allowed by the statutory maximum sentence of imprisonment for each count of conviction.
>
> This section applies to multiple counts of conviction (A) contained in the same indictment or information, or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.
>
> Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment.

18 U.S.C.S. app. § 5G1.2 (LexisNexis, Lexis Advance through Public Law 117-80, approved December 27, 2021). The presumption is for concurrent sentences to be imposed on multiple counts. Here, the maximum penalty permitted by Count One and Count Two is one year. (PSR ¶ 86). A total sentence of one year, permitted under Counts One and Two, has a statutory maximum adequate to permit imposition of the total punishment as the sentence of the Court since the Federal Sentencing Guidelines have been calculated at 2-8 months. There is no need to impose a consecutive sentence in this case.

**E. The 3553(a) Factors Do Not Support the Government's Requested Sentence**

The government acknowledges that Mr. Brodnax did not engage in any violence or destruction of property while inside the Capitol and that is why he was charged with misdemeanor offenses, yet it is requesting a twenty-one-month sentence. ECF 41 at 31. As argued above, no defendant charged with misdemeanor offenses has received a prison term of more than six months.

The government states that it "would not be seeking a twenty-one month prison sentence in this case absent the defendant's substantial criminal history, resulting in a Criminal History Category IV." ECF 41 at 3-4. But again, as demonstrated above, many misdemeanor defendants with criminal histories have received as little as 45 days. In addition, all of Mr. Brodnax's criminal history is counted in reaching his criminal history score of IV. Even with that criminal history, the guidelines are 2-8 months. It is also important to remember that the government was not so bothered by Mr. Brodnax's criminal history to request pre-trial detention in this case, reflecting the government's assessment that he did not pose a danger to the community.

The government argues that Mr. Brodnax was "brazen" in his behavior; however, his picture sitting on the SWAT vehicle is more peaceful than what Mr. Bauer did; yet the government only asked for 35 days for Mr. Bauer. 1:21-CR-48-1 at 9.

The government is flexing its muscle and trying to punish Mr. Brodnax because he chose not to accept the plea offer in this case. Mr. Brodnax is similarly situated as the other individuals who the government has charged with misdemeanor offenses. He has pled guilty, accepted responsibility, expressed remorse and engaged in post-offense rehabilitation. He is requesting that the Court impose of period of probation with home

18

detention. That is the sentence that is minimally sufficient to punish him for his conduct in this offense.

**Conclusion**

For the reasons argued above, Mr. Brodnax respectfully request this Court to impose a sentence of probation and a special condition of home detention is deemed necessary.

Respectfully Submitted,<br>
ANTIONNE DE SHAUN BRODNAX

By: _____/s/_____
        Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 14, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: Michael Liebman, Assistant United States Attorney, 555 Fourth St., N.W., Washington, D.C. 20530.


Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA  23219-1884
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org