UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case 1:21-CR-350 |
| ) | |
| ANTOINNE BRODNAX, ) | |
| Defendant. ) | |
| ) | |

**Defendant's Supplemental Sentencing Memorandum**

COMES NOW, Antoinne Brodnax, by counsel and files his supplemental sentencing memorandum with the Court. Mr. Brodnax entered a plea to the four-count information in this case because he was unable to reach a plea agreement with the government; however, Mr. Brodnax's decision to enter a straight up plea in lieu of entering a plea agreement is not a factor for the Court to consider in imposing sentence in this case. *United States v. Hartley*, 34 F.4th 919, 929 (10th Cir. 2022)(holding that under 18 U.S.C. § 3553(a), court abused its discretion by imposing a harsher sentence on the defendant because she entered an open plea without a plea agreement).

**Procedural History**

Mr. Brodnax was charged in a four-count criminal information on May 11, 2021. (PSR ¶ 1). On October 22, 2021, he entered a plea to all four counts of the information. (PSR ¶ 4). Mr. Brodnax filed a Statement of Offense at the time of his guilty plea, and filed an Amended Statement of Offense with the Court on July 13, 2022. (ECF 32, 60). On July 12, 2022, the Court held an evidentiary hearing concerning the objections that Mr. Brodnax had filed. At the conclusion of the hearing, the Court ruled that the appropriate guideline was USSG § 2B2.3 – not USSG § 2A2.4 to calculate the base offense level for Mr. Brodnax's conviction on Count Two. By way of an order entered on August 18, 2022, the Court found that a two-level upward adjustment for

obstruction or impeding the administration of justice under USSG § 3C1.1 was appropriate in this case with respect to Mr. Brodnax's convictions on Counts One and Two. (ECF 61).

As a result of the Court's decisions the United States Probation Officer prepared a final presentence report. (ECF 62). The probation officer has properly calculated a guideline range of 6-12 months on Counts One and Two. (PSR ¶ 88). The applicable guideline range is in Zone B of the sentencing table. This allows the Court to impose a sentence of probation with a period of home detention. USSG § 5C1.1. (PSR ¶ 104). The guidelines do not apply to Counts Three and Four.

Title 18 U.S.C. § 3584 (a) states that "multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." *Id*. see *Sester v. United States*, 566 U.S. 231 (2012). In determining whether the terms imposed are to be ordered to run concurrently or consecutively, the Court shall consider the factors in 3553(a). 18 U.S.C.§ 3584(b). Mr. Brodnax requests that the punishment for all four counts of the information run concurrently.

## Corrections to Presentence Report

Under Fed.R.Crim.P. 32 and USSG § 6A1.3, the Court can order corrections to the presentence report concerning factors important to the sentencing determination. Mr. Brodnax has the following corrections to the presentence report:

1. Paragraph 20 – the two references to time in this paragraph should be changed from 4:01 and 4:06 to 3:01 and 3:06. This is consistent with the Amended Statement of Offense filed with the Court on July 13, 2022. (ECF 60). This reflects that Mr. Brodnax was in the Capitol for less than an hour which is a fact important to sentencing.

2. Paragraph 61 – Since the filing of the presentence report Ms. Yearwood has left her employment and is currently not working. Therefore, Mr. Brodnax is the sole source of income for the household that includes Ms. Yearwood and her three daughters. (Exhibit 1).

3. Paragraph 62 – Mr. Brodnax's daughter is now 10 years old not 9 years old and in the 5th grade not the 4th grade.

4. Paragraph 76 – on May 25, 2022, Mr. Brodnax left his employment with Universal Pure in Villa Rica, Georgia and was hired by Print Pak in Villa Rica, Georgia. Mr. Brodnax just received a raise and earns $22.50 an hour. The company makes food wrappers. Counsel has appended Mr. Brodnax's most recent comments from his supervisor. (Exhibit 2).

**Mr. Broadnax Disagrees With the Probation Officer's Recommendation of Nine Months in Custody and Request a Sentence of Probation with a Special Condition of Home Detention.**

Mr. Brodnax has made a request for probation with a special condition of home detention in his prior pleadings, and incorporates those arguments here. (ECF 36, 43). The probation officer has recommended a sentence of 9 months custody based upon the "defendant's pattern of recidivism."[1] (ECF 63 at 2). As noted in Mr. Brodnax's previous submission to the Court the government has never argued for more than 6 months of confinement in a misdemeanor case where the defendant has pled guilty, even when the defendant had a long prior criminal record. (ECF 43).

---

[1] Counsel would note that the Probation Officer indicates, "[T]he defendant has been detained and is ineligible for voluntary surrender. 18 U.S.C. § 3143(a)(2)." (ECF 63 at 3). This is not true, Mr. Brodnax has been on pretrial release since May 11, 2021. (PSR ¶ 1). Therefore, if the Court were to impose an active term of incarceration he would be eligible for voluntary surrender.

Mr. Brodnax's criminal history does not support a sentence of incarceration. As the attached chart (Exhibit 3) makes clear the only misdemeanor defendant who received a sentence close to what the probation officer has recommended in this case is Jesus D. Rivera, who was convicted after a bench trial and sentenced to eight months of custody, followed by one year of supervised release. (1:21-CR-60).

According to the government's sentencing memorandum in the *Rivera* case, a sentence of nine months of incarceration was appropriate because:

> As explained herein, a sentence of a nine months' incarceration, followed by 12 months of supervised release, and $500 in restitution is appropriate in this case because Rivera: (1) filmed the assault on the police at the Lower West Terrace as they attempted to hold off rioters who were trying to get to the Upper West Terrace, and continued filming the assault on police as their line gave way; (2) encouraged rioters climbing the walls to the Upper West Terrace, yelling to them that "there's an easier way up!"; (3) made a concerted effort to go to the front of the mob that was trying to breach the Senate Wing Door; (4) watched rioters breach the Parliamentarian Door; (5) entered the Capitol through a broken window adjacent to the Senate Wing Door; (6) spent 20 minutes inside the Capitol going, as he had previously stated he would, to the "middle" by entering the Crypt; (7) live-streamed the riot and urged his followers to share his broadcast, as he celebrated the riot and the destruction of property as it was on-going; and (8) in the days after the riot, not only demonstrated no remorse or contrition for his acts, but instead mocked the pain and trauma suffered by victims and celebrated his participation in the riot in public posts on his social media accounts.

(1:21-CR-60, ECF 69 at 2). Mr. Brodnax did not engage in any destructive behavior while inside the Capitol and only took pictures of himself with some of the statues. In cases where individuals engaged in similar conduct the government has requested a sentence of probation with home detention. In the case of *United States v. Richard Franklin Barnard*, 1:21-CR-235, the government asked for thirty days of home confinement and 60 hours of community service with 36 months of probation. In making the request the prosecutor stated:

> One final note. I think that the -- the selfie-style photograph of these two individuals inside the building is sort of telling or a microcosm of that day. It would make one

4

> believe, if they didn't know any better, that these gentlemen, along with all these other rioters, were on a sightseeing tour, except that they're inside the United States Capitol as it's being violently breached by thousands of people, which is offensive to most Americans and American democracy. So for all those purposes, Your Honor, that's why we're asking for that sentence for Mr. Barnard.

(1:12-cr- 235, ECF 53 at 15).   The Court ultimately imposed one year of probation and one month of home confinement on electronic monitoring.   In the case of *United States v. Robert Chapman*, 1:21-CR-676, the defendant had the following criminal record: 2002: Making graffiti; 2005: Driving while intoxicated, 1st offense; 2005: Attempted criminal possession ; weapon, 4th firearm weapon and violation tail lamps; 2009: Criminal mischief: intent to damage property; 2014: Criminal trespass 3rd;   2017: Criminal possession of controlled substance; 2019: Criminal possession of a controlled substance – 7th, and engaged in more egregious activity inside the Capitol, he received 18 months of probation with 3 months of location monitoring. (1:21-CR-676, ECF 35 at 26).  Similarly in the case of *United States v. Hentschel*, despite the defendant having an "extensive criminal history" and being on probation for felony offenses at the time she travelled to Washington, D.C. she received a sentence of three years of probation with 45 days in a halfway house. (1:21-CR-667, ECF 43 at 2).  In the case of *United States v. Rusyn*,  where the defendant had a criminal history category III, the defendant was sentenced to two years of probation with sixty days of home detention. (1:21-CR-303, ECF 49 at 11).  In *United States v. Sywank*, a defendant with a lengthy criminal history was sentenced to two years of probation and 120 days of home detention with electronic monitoring.  (1:21-CR-494, ECF 51 at 27). The attached chart demonstrates that the Court has imposed a sentence of probation with a period of home detention with location monitoring in approximately 30% of the misdemeanor cases that have been sentenced by the Court.  The imposition of nine months in custody as recommended by the probation officer in this case would result in a sentencing disparity.

A sentence of probation with a special condition of home detention for Mr. Brodnax is appropriate. He has been on pretrial release since May 11, 2021 (PSR ¶ 1). He relocated to Georgia and has been gainfully employed during his prior of pretrial release. (PSR ¶¶ 74-76). He is now the sole source of income for his fiancée and her three children. (Exhibit 1). The government acknowledges that Mr. Brodnax did not engage in any violence or destruction of property while inside the Capitol and that is why he was charged with misdemeanor offenses. (ECF 41 at 31).

Congress identified when probation should be a presumptive sentence, when some term of imprisonment should be imposed, and encouraged the use of non-prison alternatives in-between. Under U.S.S.G. § 5C1.1(c)(3) the Court may impose a sentence of probation that includes a condition of home detention.[2] According to the U.S. Sentencing Commission, offenders are less likely to recidivate when their sentence is probation as opposed to straight prison.[3] Finally, the Supreme Court has recognized that supervision imposes a serious restriction on a person's liberty. *See Gall v. United States*, 552 U.S. 38, 48 (2007). Individuals on supervision are "nonetheless subject to several standard conditions that substantially restrict their liberty." *Id.*; see also *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal citation omitted). Probation is a sentence and provides an extra measure of deterrence and protection of the community in addition to a restriction on one's freedom. Finally, the Court must consider

---

[2] Mr. Brodnax would note that U.S.S.G. § 5F1.2 has also been amended and makes plain that when home detention is made a condition of supervision, the Court may use electronic monitoring or an alternative means of surveillance may be used as appropriate. U.S.S.G. § 5F1.2 cmt. 1.

[3] Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004). Available at: www.ussc.gov/publicat/Recidivism_general.pdf

sentencing disparity, imposing the 9 months recommended by the probation officer would result in sentencing disparity in this case.

## Conclusion

For all the reasons previously stated in ECF 36 and 43, and the arguments above, Mr. Brodnax requests this Court sentence him to a term of probation with a special condition of home detention.

                                              Respectfully submitted,
                                              ANTIONNE BRODNAX

                                              By: _____/s/_____
                                                            Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA  23219
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:  Michael Liebman, Assistant United States Attorney, 555 Fourth St., N.W., Washington, D.C. 20530.

                                                     _____/s/_____
                                                         Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Eastern District of Virginia

701 E. Broad Street, Suite 3600 Richmond,
VA   23219-1884
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org