UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 1:21-cr-00350-PLF |
| | : | |
| ANTIONNE D. BRODNAX, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes the defendant's motion for early termination of supervised release (ECF no. 79).

Background

On May 11, 2021, defendant Antionne Brodnax was charged by information with four misdemeanors arising from his participation in the January 6, 2021 attack on the U.S. Capitol: (1) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); (2) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); (3) disorderly conduct in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and (4) parading, demonstrating or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four). On October 22, 2021, without the benefit of a plea agreement, the defendant pled guilty to all four counts.

On December 19, 2022, the Court sentenced the defendant to five months of imprisonment on each count, with the sentences to run concurrently, to be followed by 12 months of supervised release for both Count One and Count Two, with those supervised release

terms to also run concurrently.  The sentences for Counts One and Two were governed by the U.S. Sentencing Guidelines.  Although the Court disagreed with the government in certain respects as to the guidelines calculation, the Court did agree with the government that the defendant had engaged in obstruction of justice and therefore imposed a two-level increase in the defendant's combined offense level calculation, pursuant to U.S.S.G. § 3C.1.

On May 19, 2023, the defendant completed his prison term and began serving his supervised release term.  The government recently consulted with the probation officer who is supervising the defendant.  She has advised that the defendant is in compliance with his conditions.  She has further advised that his in-person reporting requirement is only necessary for drug testing under the "color code" program, and that, because he has been testing negative, this requirement has gradually been reduced.  Moreover, the officer has advised that once the defendant is within three months of completing his supervised release term—a milestone he presumably reached earlier this week—and assuming no positive drug tests, the color code reporting program will end as to him, and he will only need to report in person for one last drug test, assuming that test is also negative.

The defendant has now moved for early termination of his supervised release, relying on 18 U.S.C. § 3583(e)(1), and emphasizing the burden imposed on him by the in-person drug-testing requirement.  Defendant's Mot. at 2.  The Court should deny the motion.

## Argument

1. <u>The defendant is a risk for recidivism which can be reduced by having him complete his supervised release term.</u>

As the Court of Appeals for the Seventh Circuit has held, "[r]educing recidivism is the main purpose of supervised release." *United States v. Siegel*, 753 F.3d 705, 708 (7th Cir. 2014). And, as the *Siegel* court noted, there is some evidence that "supervised release and other

programs of community supervision do reduce recidivism, perhaps substantially." *Id.* at 709; *see also United States v. Johnson*, 523 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

Prior to participating in the attack on the Capitol, this defendant had a significant record of recidivism, as well as a record of failing to comply with both post-conviction and pretrial supervision. As the government pointed out in its initial sentencing memorandum (ECF no. 41), and as indicated in the Presentence Investigation Report (ECF no. 74), the defendant was first arrested at the age of 18 in 2000, and charged under Virginia law with possession of cocaine. While that charge was still pending he was arrested that same year for robbery in violation of Virginia law. He was then convicted on the cocaine charge and while serving that sentence twice had his probation revoked. He also was convicted on the robbery charge.

Thereafter, in 2005, the defendant was convicted of the federal offense of possessing a firearm after having been convicted of a felony. He was sentenced to a period of imprisonment followed by a term of supervised release. In 2007, while on supervised release, he was convicted under Virginia law of possession of drug paraphernalia. Thereafter, in 2009 he violated his release conditions for the federal firearms conviction and was resentenced to additional imprisonment.

Eight years later, in March 2017, he was charged with a felony drug offense under Virginia law. Two months after that, after having pled guilty to that offense, he was charged with a second felony drug offense under Virginia law. Following convictions for both these offenses, he was sentenced to a period of incarceration followed by a period of probation that began in 2019. He was still on probation for those convictions when he approached and unlawfully entered the U.S. Capitol on January 6, 2021.

In sum, the government submits that the defendant's repeated recidivism needs to be addressed and the successful completion of his supervised release term will aid in doing so.

2. <u>There is no statutory basis for the Court to terminate the defendant's supervised release early.</u>

Title 18, U.S.C. § 3583(e)(1) provides in pertinent part:

> (e) Modification of conditions or revocation.--The court may . . .
>
> (1) terminate a term of supervised release and discharge the defendant released *at any time after the expiration of one year of supervised release*, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

(emphasis added). The defense motion offers no authority, other than the above statutory provision, for the Court to grant the relief of early termination of the defendant's supervised release term.

As the words of the statute make clear, a defendant seeking early termination of his supervised release term must have first served one year of supervised release. This defendant has served roughly nine months. Accordingly, the statute does not provide a basis at this time—and might never, assuming the defendant's period of supervised release expires as scheduled in May—for the Court to terminate his release term.[1]

---

[1] It is worth noting that Congress is currently considering legislation that, if enacted, would eliminate this one-year threshold requirement. *See* Senate Bill 2681 § 3 (available in Westlaw at 2023 CONG US S 2681; H.R. Bill 5005 § 3 (available in Westlaw at 2023 CONG US HR 5005) (both introduced on 7/27/2023).

3. <u>The travel burden on the defendant is de minimis.</u>

As discussed above, the defendant's supervising probation officer has advised that the defendant only has one more remaining in-person reporting obligation, assuming he has not had a positive drug test since the undersigned spoke the officer, and assuming he does not test positive on what should be his last test.  Accordingly, the travel burden, emphasized in the defense motion, is de minimis.

Conclusion

For the foregoing reasons, and for any additional reasons the government might offer at a hearing on the defense motion, the defense motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

<u>/s/*Michael C. Liebman*</u>
Michael C. Liebman
Assistant United States Attorney
D.C. Bar No. 479562
601 D Street, N.W., Room 4.1501
Washington, D.C.  20530
(202) 252-7243
michael.liebman@usdoj.gov